IN THE SUPREME COURT OF MISSISSIPPI

NO. 93-CA-00405-SCT

*DERWOOD MCCULLOUGH*

*v.*

*MARTIN M. COOK*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/31/93 |
| TRIAL JUDGE: | HON. HARVEY S. BUCK |
| COURT FROM WHICH APPEALED: | CHICKASAW COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | E. FARISH PERCY |
| | KENNETH M. BURNS |
| | GRADY F. TOLLISON JR. |
| ATTORNEY FOR APPELLEE: | KENNA L. MANSFIELD JR. |
| NATURE OF THE CASE: | CIVIL - TORTS - OTHER THAN PERSONAL INJURY AND PROPERTY DAMAGE |
| DISPOSITION: | REVERSED AND REMANDED - 8/22/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 9/12/96 |

**BEFORE DAN LEE, C.J., McRAE AND SMITH, JJ.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. On October 11, 1991, Derwood McCullough filed a libel action against Journal Publishing Company, Martin M. Cook, and Sid Scott in the Circuit Court of Chickasaw County, Second Judicial District. Scott had written an article about a drug bust in Chickasaw County on July 15, 1991. In the article, he alleged that one of the seized vehicles belonged to Derwood McCullough. On April 28, 1992, defendant Cook filed a summary judgment motion, arguing that there was no factual basis for McCullough's allegation that Cook made a libelous statement concerning McCullough. The Circuit Court granted the Summary Judgment motion and entered a final judgment dismissing Cook as a defendant on April 7, 1993. Aggrieved, McCullough appeals to this Court the following issues:

> **I. Was there a genuine issue of material fact precluding the trial court's granting summary judgment?**

**II. Did the trial court err in ruling that Cook's statement to Scott was not false?**

**III. Did the trial court err in ruling that no reasonable jury could find, based on the evidence before the trial court, that McCullough proved by clear and convincing evidence that Cook maliciously made a false and misleading statement about McCullough?**

<u>FACTS</u>

¶2. Derwood McCullough had served as Chancery Clerk of Chickasaw County for thirty-six years, and held this position during the time that the alleged defamatory statement was printed. The statement at issue appeared in a front page article of the local section of the *Northeast Mississippi Daily Journal* on July 16, 1991. The article concerned a three month investigation culminating in a drug bust on July 15, 1991, at which time officers arrested five people, including Earl Gladney and his wife Gail, on various counts of distributing marijuana. Law enforcement officers also confiscated four vehicles. The article, written by Sid Scott, stated,

> Four vehicles were confiscated during the raid, Sheriff Mack Cook said. One of them, a Ford pickup, is registered to Derwood McCullough, Chickasaw County Chancery Clerk, according to records at the State Tax Commission. The truck registered to McCullough was confiscated from Gladney's mobile home in Van Vleet, Cook said.

¶3. The article also stated, "McCullough and Gladney, also known as E.G. Harris, have been linked before on suspected criminal charges. In September they were indicted on criminal fraud charges in Federal court in Oxford. . . . The charges against them were dismissed . . . in February." The headline was "Five arrested in Chickasaw County drug bust" and had a tag line which read "Chancery clerk's truck seized." The article explained that McCullough could not be reached for comment to explain why his truck was at the scene of the drug bust.

¶4. McCullough filed an action for damages against Journal Publishing Company, Martin M. "Mack" Cook, and Sid Scott for libelous statements made concerning him. Cook was serving as Chickasaw County Sheriff at the time. Sid Scott was a reporter for the *Northeast Mississippi Daily Journal,* and its publisher, the Journal Publishing Company.

¶5. McCullough, in his complaint claimed that Cook told Scott that McCullough owned the pickup. However, Cook contends that he gave the tag numbers to Scott and let him find out who the owners of the vehicles were on his own. McCullough called Sheriff Cook between 3:00 and 4:00 p.m. on July 15, 1991, the day of the drug bust, and told him that the confiscated pickup truck had been sold to Gladney on June 24, 1991, even though the tag on the pickup may still be registered to McCullough. McCullough said that he did not take the tag off the truck because it had expired and did not have any trade-in value. McCullough said he requested that Cook correct any impression of McCullough's ownership that Cook may have left with any journalists or television reporters. McCullough claims that Cook knew when he gave the license tag numbers to Scott, that Scott would discover that the tag was registered to McCullough and then claim that McCullough owned the pickup confiscated in connection with the arrests.

¶6. Earl Gladney bought the pickup from McCullough on June 24, 1991 and filed a title application

that day. On July 15, 1991, certain State Tax Commission records showed that Gladney had filed a title application, was the owner of the pickup, and had purchased the truck June 24, 1991. However, this information was only available if a check was run on title applications. The checks in question were checks on the license tag number rather than the title application and therefore indicated that the tag was registered to McCullough. Both Scott and Cook testified in deposition that they were not aware that checks could be run based on title applications. Cook stated that McCullough told him about running checks on the applications at the tax assessor's office, but Cook claimed that he did not know as to what McCullough was referring.

¶7. Earl Gladney stated in an affidavit that he told Sheriff Cook on the morning of his arrest that the pickup belonged to him and that he had previously purchased the pickup from McCullough. Cook did not deny this, rather he said that he did not recall talking to Gladney about the ownership of the pickup. Cook did state that Gail Gladney, Earl Gladney's wife who was also arrested, told him on the morning of the arrest that the pickup was in Earl's name and that Earl had borrowed some money against it.

¶8. In addition, Cook told several other reporters that a truck registered to McCullough was confiscated at Gladney's mobile home and that Gail Gladney stated that the truck belonged to her husband. However, as the day progressed, the Sheriff's office became busier and Cook stated that when journalists called regarding the drug bust, he began simply giving out the tag numbers and not the names associated with these numbers. Cook said that after McCullough called him later in the afternoon to ask him to clear up any misunderstandings about the ownership of the vehicle, Cook then called some of the journalists to which he had given McCullough's name and let them know that the vehicle had been sold to Gladney, even though the tag reflected that McCullough owned the truck. He did not call Scott because he had not named any names in his earlier conversation with Scott about the confiscated vehicles.

¶9. On July 17, 1991, the *Northeast Mississippi Daily Journal* published another article by Sid Scott about the drug bust and confiscated vehicles. This article stated that "[a] pickup truck found at the scene of a drug bust Monday is registered in Chickasaw County Chancery Clerk Derwood McCullough's name, though the title shows it no longer belongs to him." Additionally, we are reminded that Scott, in his July 16 article, emphasized McCullough's connections to Gladney when he wrote of the indictment, later dismissed, that the two men faced in federal court. On July 16, Scott wrote, "McCullough and Gladney have been linked before on suspected criminal charges." The July 16 article and the July 17 article were published just days before the qualifying deadline for the chancery clerk election. McCullough claims that he did not run for reelection as chancery clerk primarily because of negative publicity caused by the July 16, 1991 and the July 17, 1991 articles published by Sid Scott in the *Northeast Mississippi Daily Journal*.

## DISCUSSION OF LAW

### I. Was there a genuine issue of material fact precluding the trial court's granting of summary judgment?

¶10. The standard for reviewing the granting or the denying of summary judgment is the same standard as is employed by the trial court under Rule 56(c). This Court conducts *de novo* review of

orders granting or denying summary judgment and examines all

> the evidentiary matters before it -- admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If, in this view, the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise, the motion should be denied. Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite. In addition, the burden of demonstrating that no genuine issue of fact exits is on the moving party. That is, the non-movant would be given the benefit of the doubt.

*Mantachie Natural Gas Dist. v. Mississippi Valley Gas Co.,* 594 So. 2d 1170, 1172 (1992); *Clark v. Moore Memorial United Methodist Church,* 538 So. 2d 760, 762 (Miss. 1989)(citing *Short v. Columbus Rubber & Gasket Co. Inc.,* 535 So. 2d 61 (Miss. 1988)).

¶11. McCullough first contended in his complaint that Sheriff Cook actually told Sid Scott that the truck was owned by Derwood McCullough. However, Cook stated that he only told Scott the license tag numbers of the confiscated vehicles. Scott, in an affidavit, affirmed that Cook only gave him the tag numbers, not any names, and he then relied upon information obtained from the official state records with regard to the names of the owners of the vehicles. Scott said that after the publication of the July 16, 1991 article, he again spoke with Cook who told him about the information contained in the Mississippi State Tax Commission records. Therefore, Cook asserts that there is no genuine issue of material fact since what McCullough alleges as an issue in his complaint -- that Cook told Scott that the vehicle belonged to McCullough -- is rebutted completely by Cook's deposition testimony and Scott's affidavit.

¶12. McCullough argued in his appeal and in his response in opposition to Cook's Motion for Summary Judgment that the statements that Cook made were libelous and defamatory. Libel is a method of defamation expressed in writing. *Bright v. Los Angeles Unified School Dist.,* 124 Cal. Rptr. 598, 604 (Cal. 1975)(opinion vacated by 556 P.2d 1090, 134 Cal. Rptr, 639). A claim of defamation requires that the following elements be established:

> (1) a false and defamatory statement concerning the plaintiff;

> (2) an unprivileged publication to a third party;

> (3) fault amounting at least to negligence on the part of the publisher; and,

> (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Eselin-Bullock v. National Gen. Ins. Co.,* 604 So. 2d 236, 241 (Miss. 1902); *Chatham v. Gulf Pub. Co., Inc.,* 502 So. 2d 647, 649 (Miss. 1987); *Fulton v. Mississippi Publishers Corp.,* 498 So. 2d 1215, 1217 (Miss. 1986). Only points (1) and (2) apply to the appeal of the dismissal of Sheriff Cook from the suit, since Cook did not have anything to do with the actual publication of the material. Applying the facts in the case *sub judice* we determine that, at first glance, the facts do not

pass the test for defamation outlined above. The information that Cook gave to Scott was factually true. A pickup truck with that license tag was among the four vehicles confiscated in the drug bust. And, Cook did not publish unprivileged information when he released this information about the drug bust and the confiscated vehicles to the press.

¶13. In order for McCullough's contention to survive a motion for summary judgment, we must determine that when Cook gave Scott the license tag numbers of the confiscated vehicles, Cook knew (1) that McCullough had sold the Ford pickup truck to Earl Gladney; (2) that Scott would run a check on the tag number and learn that McCullough was the owner; (3) that Scott would do nothing further to verify whether McCullough was the owner, and (4) that Scott would publish a newspaper article stating that McCullough owned the pickup truck confiscated in the raid. We would have to accept McCullough's allegation that when Cook gave Scott the license tag numbers, the information was so incomplete that it became a false and defamatory statement. In other words, we would have to find that Cook provided limited information while intentionally withholding other information from Scott, knowing that Scott would publish a newspaper article stating that McCullough owned the Ford truck. In our view, Cook's information was incomplete given the circumstances, especially after McCullough's call informing Cook that he had sold the truck, that it was at most a false and defamatory statement, or at the very least a material factual matter where reasonable minds could differ and therefore, should be decided by a jury. The trial court erred on this issue.

### II. Did the trial court err in ruling that Cook's statement to Scott was not false?

¶14. Cook lists a number of reasons why his statements to Scott do not give rise to a cause of action for defamation. The threshold question in any defamation action is whether the published statements are false. *Blake v. Gannett Co., Inc.*, 529 So. 2d 595, 602 (Miss. 1988). Truth is a complete defense to an action for libel. *Id.*; *Fulton v. Mississippi Publishers Corp.,* 498 So. 2d 1215, 1217 (Miss. 1986); *Prescott v. Bay St.. Louis Newspapers, Inc.,* 497 So. 2d 77, 80 (Miss. 1986)( quoting *Rinsley v. Brandt*, 700 F.2d 1304, 1307 (10th Cir. 1983)). Here, the statements made by Cook were not only substantially true, but they were absolutely true. That particular license tag number was on a vehicle found at the scene of the arrests. License tag records showed that the tag was registered to McCullough. However, the tag had been expired for sixteen months, an extended length of time which should have put Cook on notice to look further to determine if McCullough was still the owner, or exactly who was the true owner of the vehicle.

¶15. Even if the subject statements were false, in order to prevail McCullough must still establish: (1) that the words employed were clearly directed toward the plaintiff; and (2) the defamation must be clear and unmistakable from the words themselves and not the products of innuendo, speculation, or conjecture. *Fulton,* 498 So. 2d at 1217 (citing *Ferguson v. Watkins,* 448 So. 2d 271, 275 (Miss. 1984)). Here, the words were not directed toward McCullough, nor was the alleged defamation clear and unmistakable. McCullough alleges that Cook's failure to tell Scott that Gail Gladney had already told Cook that her husband owned the pickup and had borrowed money on it at the bank was clearly an omission of pertinent facts, the implication and effect of which was clearly directed toward McCullough. Cook was aware of what Gail Gladney, a person he had just arrested in connection with a drug bust, said about Earl Gladney owning the truck[1] and aware of information to which he had personal access that showed McCullough to be the owner.[2] At the time that Cook spoke with Scott,

he had conflicting information as to the ownership of the truck. All in all, at the time he spoke to Scott, there was some evidence that he *knew or reasonably should have known from the information he had* that the truck did not belong to McCullough, and yet Cook withheld this vital information from Scott. Even given the opportunity and encouraged by McCullough to correct any misunderstandings with the reporters, Cook still did not advise Scott that he had information which indicated McCullough did not in fact own the truck seized during the drug bust.

¶16. As to the second criterion concerning the use of speculation and innuendo, we would have to determine that Cook *knew* that Scott would have access to such computer, run a tag check, and then, without further checking with McCullough, the alleged owner, to verify his ownership, print a story stating that McCullough was the owner of the pickup that was confiscated in the drug bust. While it might appear to require speculation to suggest that Cook could envision that the whole story, including tag line and block quote, would revolve around, not the people arrested for selling marijuana, but around the chancery clerk being the owner of the confiscated pickup, nevertheless, under the facts of this case, it is not unreasonable to suspect the probable outcome of the ultimate news story. Cook should have relayed the entire vital body of information that he possessed which indicated that McCullough did not own the truck. At most, withholding the information placed a distorted spin upon Cook's statement to Scott so as to make the statement materially false, or at the very least, gave the underlying implication that the statement was false.

¶17. McCullough cites to several cases in which courts in other jurisdictions have recognized actions for damages where the information was so distorted as to make the statement false or where the underlying implication of the statement is false. *See **Memphis Publishing Co. v. Nichols,*** 569 S.W.2d 412, 420 (Tenn. 1978); ***Phipps v. Clark Oil & Refining Corp.,*** 396 N.W.2d 588, 594 (Minn. 1987) *See also*, ***O'Brien v. Papa Gino's of America, Inc.,*** 780 F.2d 1067, 1073 (1st Cir. 1986); ***Church of Scientology of California v. Flynn***, 744 F. 2d 694, 696-697 (9th Cir. 1984); ***Gannet Co., Inc. v. Re,*** 496 A.2d 553, 557 (Del. 1985). We agree with McCullough's claims that though Cook's statement to Scott that the pickup's license tag number, 8ACD0034, was true, the statement's underlying implication that McCullough owned the pickup was false, due to Cook's failure to disclose the information he had at that time about the conflict in ownership.

¶18. In ***Memphis Publishing***, the newspaper reported that the plaintiff, Mrs. Nichols, was shot by a woman after that woman "arrived at the Nichols' home and found her husband there with Mrs. Nichols." 569 S.W.2d at 414. What the article did not report was that also present at the time of the shooting were Mrs. Nichols' husband and two neighbors, all of whom were sitting in the living room talking. The plaintiff contended that the newspaper article clearly implied that Mrs. Nichols and the assailant's husband were having an adulterous affair and were caught. *Id.* That court held that "truth is a defense to defamation only when the underlying implication of the statement is true, not merely when the statement is verbally accurate." *Id.* at 420.

*¶19. **Memphis Publishing*** involved a private-figure plaintiff suing a media defendant about a matter of public interest. In the case *sub judice,* McCullough is a public figure and we address this in the next section. However, we believe that ***Memphis Publishing*** stands for the general proposition that material omissions from reports of true facts are capable of creating a defamatory impression.

¶20. Although admittedly a close question in the case at bar, we adopt the logic of ***Memphis***

***Publishing.*** We hold that such would be a defense for Cook in a summary judgment motion, but for the fact that the underlying implication of his statement, that McCullough owned the truck, is not true. This is a situation where Cook omitted certain explanatory phrases, that being Mrs. Gladney's explanation for the presence of the truck, and gave out other information, that being the tag number of the vehicle. Once the tag number was run on the computer, it would appear at first glance that the vehicle belonged to McCullough. The omission of those explanatory phrases left the impression that when the tag number was checked, that without question the truck belonged to McCullough. Cook was aware of these two explanations. First, Cook knew of Gail Gladney's statement that McCullough was not the owner of the truck, but that her husband owned it. He did not deny Earl Gladney's statement that he too had told Cook that McCullough had sold the truck to him on June 24, 1991. Cook simply claimed that he did not remember that statement. Secondly, Cook had the tag number from the truck and a investigation run on only the tag number revealed McCullough to be the owner. The tag had been expired for sixteen months. Cook did not inform Scott of these two explanations regarding true ownership that he had concerning the registration of the truck.

¶21. McCullough called Cook on the afternoon of July 15, the day of the arrests, and told Cook he no longer owned the truck. He also told Cook how to check the title application to verify his claim that he no longer owned the truck. Cook did not check title applications because he claimed not to know how to do so. This claim is astounding and somewhat questionable that a sheriff, the chief law enforcement officer of a county, would not know the simple procedure of checking a vehicle title to determine who is the true owner. This is especially so with such an experienced law enforcement officer as Cook. How would Cook investigate stolen vehicles in Chickasaw County without knowledge of such procedures? While this procedure might not be common knowledge to the public, nevertheless, to a seasoned law enforcement officer, it would be elementary. It is also quite troublesome that Cook only selectively straightened out his story with some of the reporters who had called earlier. He never told Scott or Hill what he told the other journalists, that the truck may have previously been sold by McCullough to Gladney. This is especially concerning as to Scott, with whom he had previously given information linking McCullough to Gladney.

¶22. Given the opportunity by McCullough later that afternoon to correct any misunderstandings or misconceptions that he may have previously relayed to the press, why didn't Cook do so and tell Scott the complete details about who actually owned the truck? Cook was evidently simply willing to leave these reporters with just a tag number and the impression that McCullough still owned the truck, even though Cook admits both McCullough and Gail Gladney had informed him otherwise. This is a situation where certain material facts were omitted and that omission made the statement defamatory or at least rose to the level where reasonable minds could differ. More importantly, the omitted facts were the truth. The trial court erred on this issue.

> **III. Did the trial court err in ruling that no reasonable jury could find, based on the evidence before the trial court, that McCullough proved by clear and convincing evidence that Cook maliciously made a false and misleading statement about McCullough?**

¶23. This Court in ***Stegall v. WTWV, Inc.,*** 609 So. 2d 348, 352 (Miss. 1991) stated that a public figure who brings a libel action can only prevail by proving through clear and convincing evidence that the publisher acted with "actual malice". In the case *sub judice*, the corollary to this is that Cook,

the Sheriff, is put in the position of the publisher. Since McCullough is a public figure, he must prove that Cook acted with actual malice in order to prevail. *Id.* Since there is evidence in the record that Cook had knowledge that McCullough was no longer the owner of the vehicle, the question of whether he demonstrated any malice or acted with any malice toward McCullough, under the facts of this case, is clearly one where reasonable minds could differ, thus a jury should determine the issue.

¶24. McCullough's main contention is that giving Scott the license tag number knowing there was some conflict in the ownership of the vehicle, rather than telling Scott the pickup was registered to McCullough, had the same implication and effect as telling Scott that the pickup was registered to and owned by McCullough. This is a logical deduction and we hold that a reasonable jury could conclude that McCullough proved by clear and convincing evidence that Cook gave Scott only the license tag number of the pickup knowing that the implication of such information was false or having reckless disregard for the truth or falsity of such implication. Again, the trial court erred.

## CONCLUSION

¶25. "Determination of whether reasonable minds could differ on an issue is a question for the trial judge." *Stegall*, 609 So. 2d at 351. In the case *sub judice*, the trial judge determined that there was no genuine issue of material fact for a jury to decide. To address the facial claim in the complaint, Scott confirmed that Cook had not told him that the pickup belonged to McCullough and then failed to inform him that the pickup did not belong to him before the article was printed July 16, 1991. After analyzing McCullough's view of the underlying implication of the statement and being keenly aware of this Court's ability to conduct a *de novo* review in a summary judgement situation, this Court holds that this statement rises to the level of a genuine issue of material fact which a jury is entitled to consider.

**¶26. REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**LEE, C.J., SULLIVAN, P.J., PITTMAN, BANKS AND McRAE, JJ., CONCUR. PRATHER, P.J., ROBERTS AND MILLS, JJ., NOT PARTICIPATING.**

1. Cook was also well aware that McCullough and Gladney were associated in various matters and there may be a reason for McCullough's vehicle to be at the Gladney mobile home. Gladney and McCullough were indicted on a criminal charge in federal district court in September, 1990, but the indictment had been dismissed in February, 1991 by the district judge. The indictment concerned actions allegedly taken by the two men through a company which they co-owned.

2. Cook ran a check through the state computer early that morning to determine ownership of the vehicles. He then ran another check at the end of the day. Both showed that the pickup was registered to Derwood McCullough. However, a check which was run the next morning, July 16, 1991, using the same tag number showed the truck to be registered to Robert Earl Gladney.