# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1998-CT-01163-SCT

*BETTY HALL*

*v.*

*TIMOTHY DALE CAGLE AND BILL JOHNSON, d/b/a JOHNSON MOBILE HOMES*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 05/14/1998 |
| TRIAL JUDGE: | HON. ROBERT WALTER BAILEY |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JAMES C. PATTON, JR. |
| ATTORNEYS FOR APPELLEE: | J. RICHARD BARRY |
| | F. GREGORY MALTA |
| | BRETT W. ROBINSON |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 09/28/2000 |
| MOTION FOR REHEARING FILED: | 10/12/2000; denied 12/21/2000 & Par.8 modified |
| MANDATE ISSUED: | 12/28/2000 |

**EN BANC.**

**MILLS, JUSTICE, FOR THE COURT:**

¶1. On certiorari we reverse the judgments of the Court of Appeals and the trial court and remand for further proceedings.

## FACTS AND PROCEEDINGS BELOW

¶2. Betty Hall was injured in an accident on August 28, 1995, at the home of Timothy and Beverly Cagle. The Cagles were moving into a mobile home, and Betty Hall was helping the Cagles unload boxes and arrange furniture. The Cagles purchased the home from Johnson Mobile Homes which had delivered it and provided temporary steps. Hall claimed that she assisted the Cagles from approximately nine o'clock in the morning until two o'clock in the afternoon. Hall stated in deposition testimony that she knew the steps to be shaky and that a Johnson employee cautioned her to be careful. Hall asserted that, upon leaving the Cagles' mobile home by a back door, she lost her footing on the steps and fell, thereby injuring herself.

¶3. Hall filed an action in the Lauderdale County Circuit Court for damages against both the Cagles and Bill Johnson d/b/a Johnson Mobile Homes but the case was dismissed on motions for summary judgment after the circuit court found that she was a "licensee" rather than an "invitee." The Court of Appeals affirmed the circuit court, ***Hall v. Cagle***, No. 1998-CA-01163-COA (Miss. Ct. App. August 3, 1999), and denied Hall's motion for rehearing.

## DISCUSSION

¶4. We have stated:

> This Court employs a de novo (without deference) review on grants of summary judgment. *Owen v. Pringle*, 621 So.2d 668, 670 (Miss.1993). The trial court must review the evidence most favorably to the nonmoving party. *Sanford v. Federated Guaranty Ins. Co.*, 522 So.2d 214, 217 (Miss.1988). There can be no issues of material fact in dispute. *Stegall v. WTWV, Inc.*, 609 So.2d 348, 350-51 (Miss.1992). If reasonable minds can differ on a material fact, summary judgment is improper. Id. The trial court should also deny summary judgment where full presentation of the evidence would "result in a triable issue." *Great Southern Bank v. Minter*, 590 So.2d 129, 135 (Miss.1991).

***Presswood v. Cook***, 658 So.2d 859, 862 (Miss. 1995). Rule 56(c) of the Mississippi Rules of Civil Procedure allows entry of summary judgment where there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. "[T]he lower court's decision is reversed only if it appears that triable issues of fact remain when the facts are viewed in the light most favorable to the nonmoving party." ***Robinson v. Singing River Hosp. Sys.***, 732 So.2d 204, 207 (Miss.1999)(citing ***Box v. State Farm Mut. Auto. Ins. Co.***, 692 So.2d 54, 56 (Miss.1997)).

¶5. As concerns the distinction between an invitee and a licensee and the duty owed to each class, this Court has previously held:

> [A]n invitee is a person who goes upon the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual advantage. A licensee is one who enters upon the property of another for his own convenience, pleasure or benefit pursuant to the license or implied permission of the owner... *Payne v. Rain Forest Nurseries, Inc.*, 540 So.2d 35, 37 (Miss.1989) (citing *Hoffman v. Planters Gin* Co., 358 So.2d 1008, 1011 (Miss.1978));

***Skelton ex rel. Roden v. Twin County Rural Elec. Ass'n***, 611 So.2d 931, 936 (Miss. 1992).

> A landowner owes a licensee only the duty to refrain from willfully or wantonly injuring the licensee, unless the landowner engages in active conduct and knows of the licensee's presence. A landowner owes a business invitee a duty of reasonable care for the invitee's safety. 518 So.2d at 648; compare *Wright v. Caffey*, 239 Miss. 470, 477, 123 So.2d 841, 844 (1960) ("invited" social guest is not invitee); see also *Adams v. Fred's Dollars Store of Batesville,* 497 So.2d 1097, 1101 (Miss.1986); *Hughes v. Star Homes, Inc.,* 379 So.2d 301 (Miss.1980).

611 So.2d at 936. Mississippi has, in one instance, recognized that a visitor may be an invitee where he comes to the home of the occupant, not for a business purpose, but, nevertheless, for the benefit of the occupant. ***Minor v. Engineering Servs. Co.,*** 304 So.2d 45 (Miss. 1974). Carrie Minor, while at the home of her mother, tripped over a surveyor's tape left on the porch of her mother's home by Engineering Services who were on the premises with the permission of the landlord. The Court found her to be an invitee entitled to the higher degree of care upon noting that she was there for the purpose of taking her mother to a doctor's appointment. The Court distinguished Minor from one, a licensee, who crossed ground where pipe was stored and who entered the premises without any express invitation or any benefit to the occupant as was the case in ***Bishop v. Stewart***, 234 Miss. 409, 106 So. 2d 899 (1958).

¶6. The comment to the Restatement (Second) of Torts defines an "invitee" as members of the public who enter property for a purpose connected with the business of the possessor. Restatement (Second) of Torts § 332 (1965). The comment further recites that a social guest is not an invitee because "he does not enter for a purpose directly or indirectly connected with the business dealing with the possessor." *Id.* The Restatement also classifies as a licensee the volunteer who comes on the land without being asked to aid in getting a truck out of mud or to put out a fire. *Id.* § 332, Comment b.

¶7. In the present case, Hall alleged that she was at the home of the Cagles to perform a service for their benefit, i.e., to assist them in moving and unpacking. Her stated purpose was for the benefit of the possessors of the home. Although the Restatement is silent in the case where one enters the premises at the invitation of the possessor, not for the visitor's own benefit but to render a service to the possessor, our decision in *Minor* indicates that such a person is entitled to be classified an invitee and afforded the same duty of care even though he does not enter upon the property for a business purpose. Hall was present on the premises at the owners' invitation as opposed to mere permission. See *Kurti v. Becker,* 733 A.2d 916, 919 (Conn. App. Ct. 1999).

¶8. Hall has alleged and proved sufficient facts to make a prima facie showing that she was an invitee rather than a licensee such that her complaint should not have been dismissed on motion for summary judgment.

## CONCLUSION

¶9. For these reasons, the judgments of the Court of Appeals and the Lauderdale County Circuit Court are reversed, and this case is remanded to the Lauderdale County Circuit Court for further proceedings consistent with this opinion.

¶10. **REVERSED AND REMANDED.**

**PRATHER, C.J., PITTMAN AND BANKS, P.JJ., AND WALLER, J., CONCUR. McRAE, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY BANKS, P.J. SMITH, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY COBB, J. DIAZ, J., NOT PARTICIPATING.**

**McRAE, JUSTICE, CONCURRING:**

¶11. Betty Hall should not be considered an invitee or a licensee in the present case. Instead, the Court should require the jury to utilize a "reasonable person" standard to decide the liability on the part of the landowner. Therefore, I concur with this Court's majority in that this case should be reversed and remanded to the lower court for further proceedings. However, as to the reasoning behind this reversal, I disagree. This Court should abolish the invitee/licensee classifications for determining liability and replace them with a "reasonable person in like circumstances" standard. This Court years ago created the different burdens for licensees and invitees in conflict with our comparative negligence statute. Approximately twenty-four states have abolished the licensee/invitee classifications. There is no need to extend this "reasonable person" standard to the classification of trespassers.

¶12. There is a modern trend away from the invitee/licensee/trespasser classifications in premises liability law to a "reasonable person in like circumstances" standard. The trend is moving away from placing the plaintiff in one of the three above categories and basing the owner/occupier's duty on what a reasonable person in like circumstances would do. This standard means that the owner/occupier should make the

premises reasonably safe or warn the person on the premises if he is unable to make the premises safe.

¶13. Previewing this trend among states, the United States Supreme Court did away with the distinction between invitees, licensees, and trespassers in maritime cases. *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 79 S. Ct. 406, 3 L.Ed.2d 550 (1959). In *Kermarec*, the Supreme Court did away with the distinction used to determine landowner liability and replaced it with a "duty of exercising reasonable care under the circumstances of each case." *Id.* at 631-32.

¶14. The Court in *Kermarec* discussed the root of the common law distinctions and stated these distinctions no longer are useful in today's modern society stating:

> The distinctions which the common law draws between licensee and invitee were inherited from a culture deeply rooted to the land, a culture which traced many of its standards to a heritage of feudalism. In an effort to do justice in an industrialized urban society, with its complex economic and individual relationships, modern common-law courts have found it necessary to formulate increasingly subtle verbal refinements, to create subclassifications among traditional common-law categories, and to delineate fine gradations in the standards of care which the landowner owes to each. Yet even within a single jurisdiction, the classifications and subclassifications bred by the common law have produced confusion and conflict. As new distinctions have been spawned, older ones have become obscured. Through this semantic morass the common law has moved, unevenly and with hesitation, towards imposing on owners and occupiers a single duty of reasonable care in all circumstances.

*Id.* at 630-31. *See Skelton ex rel. Roden v. Twin County Rural Elec. Ass'n*, 611 So. 2d 931, 940 (Miss. 1992) (Banks, J., dissenting).

¶15. Following *Kermarec*, the trend among states developed to abolish the distinction between invitees, licensees and trespassers. Although the principles in *Kermarec* applied to maritime cases, many cases have utilized the reasoning in *Kermarec* as it applies to other fact situations. *See Nelson v. Freeland*, 349 N.C. 615, 621-22, 507 S.E.2d 882, 886-87 (1998).

¶16. Exemplifying a strong trend, *Nelson* stated ten jurisdictions have abolished these common law classifications completely, while fourteen jurisdictions have repudiated the invitee/licensee classifications, but maintained the limited-duty rule for trespassers. Therefore, nearly half of the states in this country and the District of Columbia have abolished or limited these common law distinctions in favor of a reasonableness standard.

¶17. The case that sparked this trend was California's seminal case of *Rowland v. Christian*, 69 Cal. 2d 108, 70 Cal. Rptr. 97, 443 P.2d 561 (1968). The dissenting opinion in *Skelton* also relied upon this case, stating that *Rowland* seemed to capture the essence of the problem of classifying land entrants as invitees, licensees, and trespassers. The *Skelton* dissent quoted *Rowland* as follows:

> A man's life or limb does not become less worthy of protection by the law nor a loss less worthy of compensation under the law because he has come upon the land of another without permission or with permission but without a business purpose. Reasonable people do not ordinarily vary their conduct depending upon such matters, and to focus upon the status of the injured party as a trespasser, licensee, or invitee in order to determine the question of whether the landowner has a duty of care, is contrary to our social mores and humanitarian values. The common law rules obscure

rather than illuminate the proper considerations which should govern determination of the question of duty.

*Skelton*, 611 So. 2d at 940 (Banks, J., dissenting) (quoting *Rowland*, 443 P.2d at 568).

¶18. For the ten jurisdictions which have completely abolished the classifications, see the following cases:

> *Smith v. Arbaugh's Restaurant*, *Inc.*, 469 F.2d 97 (D.C. Cir. 1972) *cert. denied,* 412 U.S. 939, 93 S. Ct. 2774, 37 L.Ed.2d 399 (1973); *Webb v. City and Borough of Sitka,* 561 P.2d 731 (Alaska 1977); *Pickard v. City and County of Honolulu*, 51 Haw. 134, 452 P.2d 445 (1969); *Keller v. Mols*, 129 Ill. App. 3d 208, 84 Ill. Dec. 411, 472 N.E.2d 161 (Ill. App. Ct. 1984) (abolishing with respect to children only); *Sheets v. Ritt, Ritt & Ritt, Inc.*, 581 N.W.2d 602 (Iowa 1998); *Cates v. Beauregard Elec. Co-op., Inc.*, 328 So.2d 367 (La.1976), *cert. denied*, 429 U.S. 833, 97 S. Ct. 97, 50 L.Ed.2d 98 (1976); *Limberhand v. Big Ditch Co.*, 218 Mont. 132, 706 P.2d 491 (1985); *Moody v. Manny's Auto Repair*, 110 Nev. 320, 871 P.2d 935 (1994); *Ouellette v. Blanchard*, 116 N.H. 552, 364 A.2d 631 (1976); *Basso v. Miller*, 40 N.Y.2d 233, 352 N.E.2d 868, 386 N.Y.S.2d 564.

*Nelson*, 349 N.C. at 622.

¶19. For the fourteen jurisdictions which have abolished the invitee/licensee classification while maintaining the trespasser distinction, see the following cases:

> *Wood v. Camp*, 284 So.2d 691 (Fla. 1973); *Jones v. Hansen*, 254 Kan. 499, 867 P.2d 303 (1994); *Poulin v. Colby College*, 402 A.2d 846 (Me. 1979); *Baltimore Gas & Elec. Co. v. Flippo*, 348 Md. 680, 705 A.2d 1144 (1998); *Mounsey v. Ellard*, 363 Mass. 693, 297 N.E.2d 43 (1973); *Peterson v. Balach*, 294 Minn. 161, 199 N.W.2d 639 (1972); *Heins v. Webster County*, 250 Neb. 750, 552 N.W.2d 51(1996); *Ford v. Board of County Comm'rs of the County of Dona Ana*, 118 N.M. 134, 879 P.2d 766 (1994); *O'Leary v. Coenen*, 251 N.W.2d 746 (N.D. 1977); *Ragnone v. Portland Sch. Dist. No. 1J*, 291 Or. 617, 633 P.2d 1287 (1981); *Tantimonico v. Allendale Mut. Ins. Co.*, 637 A.2d 1056 (R.I.1994); *Hudson v. Gaitan*, 675 S.W.2d 699 (Tenn. 1984); *Antoniewicz v. Reszcynski,* 70 Wis.2d 836, 236 N.W.2d 1 (1975); *Clarke v. Beckwith*, 858 P.2d 293 (Wyo.1993).

*Id.* at 622-23.

¶20. Part of the reason for the departure from the common law classifications is that courts were often making certain exceptions and subclassifications in these categories that would allow the distinction "to better congeal with our present-day policy of balancing land-ownership rights with the right of entrants to receive adequate protection from harm." *Nelson*, 349 N.C. 619 (citing *Kermarec*, 358 U.S. at 630-31). Essentially, the strict standards of invitee, licensee and trespasser have been altered by the introduction of exceptions in order to make the classifications applicable in modern-day society.

¶21. To understand the adherence to this classification system as well as the departure from it, it is helpful to know a little about the history of these classifications. The distinctions between invitee, licensee, and trespasser have their roots in nineteenth-century England. *Nelson*, 349 N.C. at 623 (citing John Ketchum, *Missouri Declines an Invitation to Join the Twentieth Century: Preservation of the Invitee-Licensee Distinction in Carter v. Kinney*, 64 UMKC L. Rev. 393, 394 (1995)). These distinctions were created in

part to restrict the jury's power because juries were comprised mostly of land entrants, who would likely attempt to burden the landowner with liability and restrain his power. *Nelson*, 349 N.C. at 623 (citing Michael Sears, *Abrogation of the Traditional Common Law of Premise Liability*, 44 U. Kan. L. Rev. 175, 176 (1995)). Another explanation for the creation of this "trichotomy" is that these principles were created before principles of negligence were established in tort law. The framework for the negligence duty of care was first defined in the 1883 case of *Heaven v. Pender*, 11 Q.B.D. 503 (1883), which was decided more than forty years after the creation of these classifications. *Nelson*, 349 N.C. at 623 n.3 (citing Ketchum, *Missouri Declines*, 64 UMKC L. Rev. at 397).

¶22. One can easily understand the reasoning behind the creation of these classifications for land entrants. However, that reasoning has long past and is no longer applicable to modern society.

¶23. Three primary reasons cited for adherence to the reasoning of the classification system are fear of jury abuse, prevention of high-cost insurance to property owners, and predictability of the law. For the first reason, fear of jury abuse, proponents argue plaintiff-oriented juries, like the feudal juries, are likely to impose unreasonable burdens upon defendant-landowners. *Nelson*, 349 N.C. at 624 (citing *Ouellette v. Blanchard*, 116 N.H. 522, 560, 364 A.2d 631, 636 (1976) (Grimes, J., dissenting)). This argument fails to recognize that juries have been applying negligence principles for years in tort cases. In addition, there is far greater variety among the persons selected as jurors today. In fact, society today places many landholders on the jury itself, eliminating the need to protect landowners from the unrestrained power of the jury to place unfair burdens upon defendant-landowners. *Nelson*, 349 N.C. at 624-25 (citing *Smith v. Arbaugh's Restaurant, Inc.*, 469 F.2d 97, 106-07 (D.C. Cir. 1972)).

¶24. The continued adherence to the common law system of classifications undermines the jury function, by forcing the jury to focus on the entrant's status rather than on the liability of the landowner. *Little v. Bell*, 719 So. 2d 757, 767 (Miss. 1998) (McRae, J., dissenting). The classifications are inefficient because "by preventing the jury from applying changing community standards to a landowner's duties, the common law rules give the landowner a special privilege to be careless. Furthermore, battles over an entrant's status often result in judicial waste, as this Court has often disagreed with trial court classifications, remanding decisions to the trial courts under revised distinctions." *Id.*

¶25. Although these classifications may serve some purpose in determining liability on the part of the entrant, *Skelton*, 611 So. 2d at 940 (citing *e.g.*, *Basso*, 386 N.Y.S.2d at 568, 352 N.E.2d at 872), the circumstances surrounding the person's entry onto the land are not dispositive on the issue of liability. *Id.* (citing *Rowland*, 70 Cal.Rptr. at 104, 443 P.2d at 568).

¶26. A second reason for not departing from the common law classifications is to prevent landowners from carrying the costs of expensive insurance policies to protect any entrants on their land. *See, e.g., Adams v. Fred's Dollar*, 497 So. 2d 1097, 1100 (Miss. 1986) ("[a] landowner need not make it impossible for persons to trespass before he may treat intruders as trespassers. To hold otherwise would be to come dangerously close to requiring that an owner be an insurer of the safety of those who unlawfully enter his property."); *see also Nelson* 349 N.C. at 625 (citing *Mariorenzi v. Joseph DiPonte, Inc.*, 114 R.I. 294, 308, 333 A.2d 127, 134 (1975) (Joslin, J., dissenting)).

¶27. However, many cases that have done away with the invitee/licensee classifications, yet maintained the trespasser classification, have stated that this abolition does not force the landowner to become an absolute insurer against all injuries that may occur on his property. For examples of this contention, see the following:

*Jones v. Hansen*, 254 Kan. 499, 510, 867 P.2d 303, 311 (1994) ("a proprietor or operator of a trade or business is not an absolute insurer of the safety of the customers"); *Poulin v. Colby College*, 402 A.2d 846, 851 (Me. 1979) ("[t]his does not require an owner or occupier to insure the safety of his lawful visitors"); *Heins v. Webster County*, 250 Neb. 750, 761, 552 N.W.2d 51, 57 (1996) ("[o]ur holding does not mean that owners and occupiers of land are now insurers of their premises"); *O'Leary v. Coenen*, 251 N.W.2d 746, 752 (N.D. 1977) ("[w]e do not now hold that land occupiers are now insurers of their premises"). Rather, they require landowners only to exercise reasonable care in the maintenance of their premises. *See Heins v. Webster County*, 250 Neb. at 760, 552 N.W.2d at 56.

*Nelson*, 349 N.C. at 625.

¶28. A third argument for adhering to the classification system is that, without it, the law would be less predictable. In many cases, however, these distinctions only allow for more unpredictability. For example, in many situations, the status of the land entrant can change from that of a trespasser to an invitee, who has permission to be on the land for the mutual benefit of the landowner and the entrant, to that of a licensee, who has permission to be on the land when the business portion of the visit has ended and the entrant is now a social guest of the landowner.

¶29. Predictability is not the hallmark result of the classification system because in many cases, courts have allowed exceptions to and broad readings of the different classifications. Mississippi case law involving invitees, licensees, and trespassers is riddled with exceptions to the strict readings of the classifications. These cases often have to be decided on a case-by-case basis, and this does not often promote predictability. *See*, *e.g.*, [*Little v. Bell*](), 719 So.2d at 764 (distinctions between active and passive negligence in determining the status); *Spears v. Mississippi Power & Light Co.*, 562 So. 2d 107, 108 (Miss. 1990) (considered standard of care owed to an invitee of a business owner when the power company had an easement and right of way across the parking lot of the business owner); *Clark v. Moore Mem'l United Methodist Church*, 538 So. 2d 760, 764 (Miss. 1989) (church member considered an invitee when she slipped and fell at church); *Hoffman v. Planters Gin Co.*, 358 So. 2d 1008, 1013 (Miss. 1978) (higher degree of care, reasonable standard, afforded to licensee when caused by active negligence); *Wright v. Caffey*, 239 Miss. 470, 473, 123 So. 2d 841, 842 (1960) (considered whether status changes from invitee to licensee when defendant's mother injured herself while stepping in a bowl of dog food and was thereafter confined to bed rest); *Dry v. Ford*, 238 Miss. 98, 102, 117 So. 2d 456, 458 (1960) (a person can lose the status of invitee when his actions go beyond the bounds of the invitation).

¶30. Despite the above exceptions and clarifications, Mississippi refuses to eliminate these common law classifications and still adheres to the variant degrees of liability for an invitee, licensee, or trespasser. This adherence is particularly strange considering Mississippi's adoption of comparative negligence close to the turn of the century.

¶31. Mississippi led the country in the early part of this century as the first state to adopt a pure comparative negligence standard. *Tharp v. Bunge Corp.*, 641 So. 2d 20, 23 (Miss. 1994) (citing Miss. Code Ann. §11-7-17 (1972)). Miss. Code Ann. § 11-7-17 reads, "all questions of negligence and contributory negligence shall be for the jury to determine." In *Tharp*, this Court abolished the "open and obvious" defense and applied the comparative negligence statute of the state instead, stating, "if a dangerous condition is obvious to a plaintiff, then surely it is obvious to the defendant as well. The defendant,

accordingly, should alleviate the danger." *Id.* at 25. The ruling in *Tharp* on comparative negligence is that the plaintiff must find some negligence on the part of the defendant before the plaintiff's claim can be considered by a jury. If there is no negligence on the part of the defendant, then there is no cause of action for the plaintiff. *Id.* at 23 (citing *Mississippi Butane Gas Sys., Inc. v. Welch*, 208 Miss. 637, 648, 45 So. 2d 262, 264-65 (1950); *see New Orleans & Northeastern R.R. v. Lee*, 205 So. 2d 923, 924 (Miss. 1968)). The defendant- landowner is in a better position than any plaintiff entrant to discover the unsafe conditions on the land and to repair them to the best of his ability. There is no need for the open and obvious defense because comparative negligence absolves this concept by placing fault on the plaintiff, as well as the defendant, if the case calls for it.

¶32. This state's comparative negligence rule should also be applied to invitee and licensee classifications of premises liability law in the form of a reasonable person standard. There is no need to apply a reasonableness standard to the classification of entrants that are trespassers. Applying a reasonable standard would be more consistent with the expectation of society today and with the negligence law of this State. Holding the landowner to the standard of a reasonable person in like circumstances would better allocate fault between the defendant-landowner and the plaintiff-entrant.

¶33. People do not structure their lives upon these archaic classifications. The relationship between an owner/occupier and the people he allows onto his land does not revolve around these stringent classifications. In the flexible and unstructured world of human relations, the duty of care owed to a land entrant should not be predicated upon these outdated distinctions.

¶34. In addition, if these distinctions are applied, they are not applied stringently, and they are ever-changing. For example, a salesperson could trespass upon a person's land until he gets to the front door of the house, where he introduces himself. After the owner/occupier gives his permission to the salesperson to be on his land and conduct business for the mutual benefit of the landowner and the entrant, then the status of the salesperson has been elevated to that of an invitee. This would be the best time for the entrant to sustain injuries. After some discussion, the salesperson and the landowner discover they were born in the same town, up north, and now the two engage in social conversation about what high school they attended and any common acquaintances. Now, the trespasser has been elevated to the position of an licensee. *See, e.g., Nelson*, 349 N.C. at 627.

¶35. Surely the above example is not out of the ordinary, yet the analysis of the status of the land entrant is disingenuous. In the minds of the two individuals, these distinctions and classifications mean nothing while they are interacting with each other. However, the notion that they are to conduct their behavior as a reasonable person would under like circumstances, meaning a reasonable person would warn the salesperson about a faulty step on his way out or about a hidden hole in the steep of the ground. However, the landowner would not warn the salesperson about these conditions as he was approaching the house because the owner had no notice of this person's approach and had no duty to warn him of these conditions at this time.

¶36. If people are ordinarily held to conduct their lives in the manner of a reasonable person in almost all other areas of tort liability, why should we continue to impose upon them these archaic distinctions in the matter of premise liability? One could argue these distinctions are put into place because landowners with large and continuous expanses of land cannot reasonably know who is on their land at any given time, and therefore, these landowners should be allowed to restrict their duty of care to certain individuals. This

argument may have some merit when applied to trespassers, but the time of feudal estates and large expanses of unchartered territory has largely past. In today's world, landowners have better control over their land and the permission they give for people to enter upon their land. A trespasser is a trespasser, but a landowner has the ability to permit certain persons onto his land. This same landowner should be required to keep his premises safe for all those he allows onto his land or to provide ample warnings otherwise. He should not be allowed to escape liability by classifying the person as a licensee or an invitee. As *Rowland* stated, a man's life or limb should not differ based on whether he is on the property for business or for a social visit. The landowner should be held to the same standard of care, to act as a reasonable person would.

¶37. Accordingly, I concur in the reversal and remand of this case, but I would abolish the distinction between invitee and licensee.

**BANKS, P.J., JOINS THIS OPINION.**

**SMITH, JUSTICE, DISSENTING**:

¶38. In my view, the majority errs in concluding that an issue of material fact exists regarding the question of whether Betty Hall was a licensee or invitee. The trial court correctly granted the defendants' motion for summary judgment and the Court of Appeals properly affirmed. Therefore, I respectfully dissent.

¶39. The degree and extent of any duty owed by a defendant to a plaintiff depends upon the relationship between the parties. *Skelton ex rel. Roden v. Twin County Rural Elec. Ass'n*, 611 So.2d 931, 936 (Miss. 1992). Where the injury in question was sustained due to an alleged condition or defect involving real property, the duty owing to the plaintiff depends upon his status on the subject property. Mississippi's distinction between licensees and invitees has recently been reaffirmed by this Court. *See Little v. Bell*, 719 So.2d 757 (Miss. 1998).

¶40. As the majority correctly states, an invitee is an individual who goes upon the premises of another in answer to the express or implied invitation of the owner of occupant for their mutual advantage. *Id.* (citing *Hoffman v. Planters Gin Co.*, 358 So.2d 1008, 1011 (Miss. 1978)). Invitees and business patrons are owed a duty of reasonable care by the owner and occupiers of real property. *Caruso v. Picayune Pizza Hut, Inc*. 598 So.2d 770, 773 (Miss. 1992). On the other hand, a licensee is a person who enters upon the property of another for his own convenience, pleasure or benefit pursuant to the license or implied permission of the owner. *Little*, 719 So. 2d at 760 (citing *Hoffman* 358 So.2d at 1011). A licensee is owed only a duty to refrain from wanton and willful injury. *Little*, 719 So.2d at 760.

¶41. In Mississippi, social guests have long been considered licensees. *See Wright v. Caffey*, 239 Miss. 470, 123 So. 2d 841, 844 (1960). Unlike a business invitee, "A social guest on the host's premises or in his home must take the premises as he finds them, with no greater right than a mere licensee with respect to the host's liability for injuries to the guest." *Id.* at 843. More specifically, "[t]he guest assumes the ordinary risks which are attached to the premises. . . [A] host merely offers his premises for the enjoyment of his guests with the same security which the host and members of his family who reside with have." *Little*, 719 So.2d at 761 (quoting *Raney v. Jennnings*, 248 Miss. 140, 147-48, 158 So.2d 715, 718 (1963)).

¶42. The majority holds that a genuine issue of material fact exists in this matter. However, this holding is unsupported by the evidence presented to the Circuit Court of Lauderdale County and the Court of

Appeals and was rightfully rejected by these courts. Hall's own testimony, as given in her deposition, clearly establishes that she was on the property merely as a licensee, when she testified as follows:

Q. Now the day that ya'll went over there, you went over there as a friend helping her, right?

A. Right, uh huh.

Q. And she didn't pay you anything for helping here?

A. Oh, no.

Q. She never indicated that she would, right?

A. No.

¶43. Furthermore, both Betty Hall and Cagle testified that a friendship existed between the two families which predated the accident by several years. Hall testified that she arrived at the Cagles' home at approximately 9:00 a.m. to help Beverly Cagle unpack boxes and arrange furniture. In this instance, there was no mutual advantage resulting from Hall's visit to the Cagle residence. Hall simply went to the Cagle home to help a friend. She had no hope or anticipation of personal gain at the time she went. Hall was, therefore, a mere licensee, and the trial court and Court of Appeals were correct in ruling as such.

¶44. In opposition to defendants' motion for summary judgment, Hall filed an affidavit in which she directly contradicted her earlier testimony by stating, "On the day of my fall I was going to the Cagle's trailer to work, not to socialize. In exchange for helping Beverly Cagle out I had my hair cut, styled and/or permed on more than one occasion prior to my fall as well after my fall." A party cannot manufacture disputed material facts where none exist. *Russell v. Harrison*, 736 F.2d 283, 287 (5ᵗʰ Cir. 1984). A movant cannot defeat a motion for summary judgment by submitting an affidavit which directly contradicts, without explanation, his previous testimony. *Foldes v. Hancock Bank*, 554 So.2d 319, 321 (Miss. 1989). Betty Hall's deposition testimony clearly shows that she was present at the Cagles' home as a friend. There was a total absence of any allegation that there was a quid pro quo arrangement until Hall submitted her affidavit. Clearly, this is an attempt by Hall to create a genuine issue of material fact where non exists.

¶45. Pursuant to Hall's status as a licensee, Cagle only owed the duty to refrain from willfully, and wantonly injuring the licensee, unless Cagle engaged in active contacts and knew of the licensee's presence. *See Lucas v. Buddy Jones Ford-Lincoln-Mercury, Inc*., 518 So.2d 646, 648 (1988). Willful and wanton conduct exceeds "mere inadvertence or lack of attention" characteristic of ordinary negligence, & means that the possessor consciously disregards a known, serious danger. *Dry v. Ford*, 238 Miss. 98, 102, 117 So.2d 456, 458 (1960). Such conduct is an extreme departure from the standard of care. *See id.* Therefore, the possessor of land owes a licensee no duty to maintain land in a safe condition but only to "to disclose to the licensee any concealed, dangerous condition on the premises of which the owner has knowledge, and to exercise reasonable care to see that the licensee is aware of the danger." *Marlon Inv. Co. v. Conner*, 246 Miss. 343, 353, 149 So.2d 312, 316 (1963).

¶46. There is no evidence that Cagle breached any legal duty owed to Hall. In fact, Hall testified that she absolutely did not think the Cagles meant to hurt her. Hall's testimony establishes that she knew the steps to the Cagle's mobile home were "unlevel." Hall testified that she had used this particular set of steps on one previous occasion about a week before the accident. She further testified that she was informed by an

employee of Bill Johnson D/B/A Johnson Mobile Homes on that occasion to be careful because the steps were not the right set for the defendant's mobile home. Significantly, Hall testified that on the day of the incident she noticed that the steps were unstable, yet she still used them to enter the Cagle house. She further stated that on the day of the incident, Beverly Cagle tried to stop her from falling and, as a result, fell herself. Perhaps most important is the testimony that Hall was present during conversations between Martha and Shannon Mann and Beverly Cagle in which the fact that the steps were not the proper steps and that anyone using the steps has to be careful was discussed. Finally, Shannon Mann testified that, prior to her fall, Hall was warned to be careful and was reminded that steps were shaky.

¶47. Additionally, it should be noted that the majority erroneously relies on *Minor v. Engineering Servs. Co.*, 304 So.2d 45 (Miss. 1974). The *Minor* decision was one which was limited to the facts and circumstances of that case. *Id.* at 48. In *Minor*, the plaintiff who was at her mother's home was injured when she tripped over a surveyor's tape. The tape had been placed on the porch of the home without any warning. *Id.* at 46. In *Minor*, neither the occupier of the land, nor the visitor who was injured, had knowledge of or warning of the location of the tape. *Id*. In contrast, in the instant case, it is undisputed that Hall knew of the condition of the steps prior to the day of the incident. She was even warned about the steps by an employee of Bill Johnson and by other individuals who where visiting the Cagle home on that same day. *Minor* is clearly distinguishable from this case.

¶48. In my view, the trial court was correct in granting summary judgment in favor of the defendants. There is no issue of material fact in dispute, and summary judgment should be granted as a matter of law. Therefore, I respectfully dissent.

**COBB, J., JOINS THIS OPINION.**