# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CA-00802-SCT

*SHIRLEY ANNETTE PINNELL*

*v.*

*PATSY BATES*

DATE OF JUDGMENT:            5/4/2001
TRIAL JUDGE:                 HON. R. I. PRICHARD, III
COURT FROM WHICH APPEALED:   JEFFERSON DAVIS COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:      PHILIP DAVID BRIDGES
ATTORNEYS FOR APPELLEE:      MATTHEW D. MILLER

                             S. ROBERT HAMMOND, JR.
NATURE OF THE CASE:          CIVIL - PERSONAL INJURY
DISPOSITION:                 REVERSED AND REMANDED - 09/05/2002
MOTION FOR REHEARING FILED:  9/19/2002
MANDATE ISSUED:

**EN BANC.**

**WALLER, JUSTICE, FOR THE COURT:**

¶1. While Patsy Bates was in the process of moving into her new house in Carson, Mississippi, she invited her friend Shirley Annette Pinnell over to visit. Pinnell arrived between 5:00 and 5:30 p.m., and the two visited with one another, had tea and coffee, cleaned and unpacked. At approximately 9:00 p.m., Pinnell exited the front door and fell from the concrete steps onto the concrete porch, breaking a finger and her leg.

¶2. Pinnell filed a complaint against Bates in the Circuit Court of Jefferson Davis County, alleging that Bates was negligent in failing to warn her of the slippery steps, to provide a hand rail, to provide sufficient lighting, and to reduce the slipperiness of the steps. Bates filed a motion for summary judgment, alleging that Pinnell was a licensee rather than an invitee and that Pinnell had shown no evidence of willful and wanton conduct on the part of Bates. The circuit court granted the motion, finding, as a matter of law, that Pinnell was a licensee, and that Bates owed no duty to Pinnell as a licensee. On appeal, we refuse to abolish the common law distinctions between licensee and invitee. However, we find that a jury question was created as to whether Pinnell was a licensee or an invitee. We therefore reverse and remand the grant of summary judgment to Bates.

## DISCUSSION

## I. WHETHER THE CIRCUIT COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF BATES.

¶3. We decline to accept Pinnell's invitation to abolish the legal distinctions between licensees and invitees. Eliminating the distinction curtails the right of unbridled use of private property. The concept that "a man's home is his castle" is the shield of protection for the owner of the humblest one-room shack as well as the owner of a large estate.

¶4. Homeowners[1] would be exposed to greater liability and would have to shoulder a heavier burden. Worse still, a jury would have the power to decide whether a homeowner has arranged the living room furniture or maintained his yard in a reasonable manner, purchased the correct "non-slip" flooring or contracted with the correct construction crew to repair the home.

¶5. The distinction between a business visitor, heretofore considered an invitee, and a social visitor, heretofore considered to be a licensee, would be abolished, and the duty owed to a social guest would be identical to the duty owed to a business invitee. Eliminating homeowners' protection from liability for injuries sustained by social guests would impose on the homeowners the same standard and duty a commercial enterprise such as Wal-Mart owes to its customers. However, in reality, there are enormous differences between businesses and residences:

> Businesses extend invitations to prospective customers, clients, etc., to come to their places of business for commercial purposes. Persons so coming are, for the most part, personally unknown to those extending the invitation. It is anticipated these invitees will roam freely about the public areas of businesses, and a part of the cost of doing business is providing reasonably safe premises. These establishments are, ordinarily, professionally designed, built, and equipped. Safety and convenience account for much of their sterile uniformity.

> Residences are designed to please the homeowners and meet their needs and wants. A residence reflects the homeowners' individuality and is equipped and operated by the homeowners according to how they want to live. We live in the age of the do-it-yourselfer. Few homes would meet OSHA's standards, and few individuals would desire to live in such a home. Modern businesses do not have polished hardwood floors, throw rugs, extension cords, rough flagstone paths, stairways without handrails, unsupervised small children, toys on the floor, pets and all the clutter of living - homes do. There are good reasons behind the old adage that most accidents occur in the home.

*Jones v. Hansen*, 867 P.2d 303, 317-18 (Kan. 1994) (McFarland, J., dissenting).

¶6. There is no compelling reason to change our time-honored law on premises liability now. The distinctions between licensee and invitee have been developed over many years and are grounded in reality.

¶7. There appears to be little change in the number of states that have chosen to abolish the common law distinctions between invitees and licensees since our review made in the case of *Little v. Bell*, 719 So. 2d 757, 762 (Miss. 1998). This lack of meaningful change confirms a reversal of "the trend" of states to abandon the distinctions between invitees and licensees discussed by Professor Keeton in 1984:

> [The failure of more states to join the "trend" of abolishing the distinctions] may reflect a more fundamental dissatisfaction with certain developments in accident law that accelerated during the

1960's - reduction of whole systems of legal principles to a single, perhaps simplistic, standard of reasonable care, the sometimes blind subordination of other legitimate social objectives to the goals of accident prevention and compensation, and the commensurate shifting of the balance of power to the jury from the judge. At least it appears that the courts are . . . acquiring a more healthy skepticism towards invitations to jettison years of developed jurisprudence in favor of beguiling legal panacea.

W. P. Keeton, Prosser and Keeton on the Law of Torts § 64 (5th ed. 1984).

¶8. As of 2001, it appears that the states are at best evenly divided on whether to continue to recognize the common law distinctions.[2] However, of those abolishing the distinctions, some states such as Louisiana still look to the traditional status distinctions in deciding cases. *See, e.g., **Boycher v. Livingston Parish Sch. Bd.***, 716 So. 2d 187, 191 n.3 (La. 1998) ("Although the common law classifications of invitee-licensee-trespasser are not determinative of liability, . . the plaintiff's status has a bearing on the question of liability.")

¶9. Since 1982, the following states have expressly rejected the abrogation of the traditional classifications: Alabama (federal court applying Alabama law) (1984); Arkansas (1988); Colorado (1991); Connecticut (1992); Florida (1982); Georgia (1997); Idaho (1987); Indiana (1982); Maryland (1984)[3]; Michigan (1999); Mississippi (2000); Missouri (1993); New Jersey (federal court applying New Jersey law) (1999); Ohio (1988); Oklahoma (1985); Oregon (2000); Pennsylvania (1989); Texas (1985); and Washington (1986). *See* Vitauts M. Gulbis, Annotation, *Modern Status of Rules Conditioning Landowner's Liability Upon Status of Injured Party as Invitee, Licensee, or Trespasser*, 22 A.L.R.4th 294 (Supp. 2001).[4]

¶10. The following states not mentioned in the Annotation have retained the traditional common law distinctions: Arizona (***Woodty v. Weston's Lamplighter Motels***, 830 P.2d 477, 480 (Ariz. 1992) ("In Arizona, the particular duty of care owed by a landowner to an entrant on his or her land is determined by the entrant's status as an invitee, licensee or trespasser."); Delaware (***Kovach v. Brandywine Innkeepers Ltd. P'ship***, 2000 WL 703343 (Del. Super. Ct. 2000) ("In determining a given plaintiff's status, Delaware Courts utilize the classifications set forth in Restatement (Second) of Torts (1965) [: possessors, trespassers, licensees, or invitees]."); South Carolina (***Sims v. Giles***, 541 S.E.2d 857, 861 (S.C. 2001) ("South Carolina recognizes four general classifications of persons who come on premises: adult trespassers, invitees, licensees and children. Different standards of care apply depending [on the status of the entrant]."); South Dakota (***Musch v. H-D Elec. Coop., Inc.***, 460 N.W.2d 149, 151 (S.D. 1990) ("South Dakota recognize[s] the traditional common law categories for those who enter onto land and are injured: trespasser, licensee and invitee."); Virginia (***Franconia Assocs. v. Clark***, 463 S.E.2d 670, 672-73 (Va. 1995) (Delineating different duties to invitees, licensees and trespassers); and Vermont (***Buzzell v. Jones***, 556 A.2d 106, 108 (Vt. 1989) (Delineating different duties to invitees, licensees and trespassers).[5]

¶11. The *Little* Court agreed with the Missouri Supreme Court's finding that time-honored precedent has served us well in balancing the interests of possessors of land with those who enter thereon:

The contours of the legal relationship that result[ ] from the possessor's invitation reflect a careful and patient effort by courts over time to balance the interests of persons injured by conditions of land against the interests of possessors of land to enjoy and employ their land for the purposes they wish. Moreover, and despite the exceptions courts have developed to the general rules, the maintenance of the distinction between licensee and invitee creates fairly predictable rules within which entrants and possessors can determine appropriate conduct and juries can assess liability. To abandon the careful work of generations for an amorphous "reasonable care under the circumstances" standard seems - to

put it kindly - improvident.

*Carter v. Kinney*, 896 S.W.2d 926, 930 (Mo. 1995).

¶12. Furthermore, the legislative branch should be addressing this issue rather than the judicial branch. The legislative branch sets public policy and the judicial branch interprets tests the constitutionality of the public policy enactment. Abolishing the distinctions between invitees and licensees is a matter which involves a balancing, or a rebalancing, of the respective rights and duties of those who own, lease or occupy land or home, and of the rights and duties of those who enter on such land or home and are injured. The legislative process insures the widest possible input of individuals or groups affected or concerned in the establishment of an appropriate public policy on issues of public concern.

¶13. If the judiciary takes it upon itself to abolish the distinctions, an opportunity for public participation in the decision-reaching process would not be provided and the Court would be making a ruling which is based only on the briefs submitted by the parties. The result reached by the majority would determine the public policy and affects the rights and duties of very nearly all of the citizens of our state. *See generally Antoniewicz v. Reszcynski*, 236 N.W.2d 1, 12-18 (Wis. 1975) (Hansen, J., dissenting).

¶14. Applying the licensee/invitee distinction to the case at bar, we find that a factual dispute exists as to the licensee/invitee status of Pinnell. In *Hall v. Cagle*, 773 So. 2d 928 (Miss. 2000), Hall alleged she was at the Cagles' home to assist with moving and unpacking, a service which she performed for Cagle's benefit. While the occasion here of Pinnell's visit may have been social, Pinnell helped out with some housework and "put[ting] some things away" because Bates was having back trouble.

¶15. We have held that a visitor may be an invitee where he comes to the home of the occupant, not for business purposes, but, nevertheless, for the occupant's benefit. *Id*. at 929 (citing *Minor v. Eng'g Serv. Co.*, 304 So. 2d 45, 48 (Miss. 1974)).

¶16. While the facts in the case sub judice are not precisely "on all fours" with the facts in *Hall* or *Minor*, Pinnell, once on the premises, performed services for Bates's benefit, and a jury question was created as to the issue of whether she was an invitee or a licensee.

**CONCLUSION**

¶17. Because a jury question exists as to whether Pinnell was an invitee or a licensee, the Jefferson Davis Circuit Court's judgment is reversed, and this matter is remanded for further proceedings in accordance with this opinion.

¶18. **REVERSED AND REMANDED.**

**PITTMAN, C.J., SMITH, P.J., COBB, EASLEY AND CARLSON, JJ., CONCUR. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ AND GRAVES, JJ.**

**McRAE, PRESIDING JUSTICE, DISSENTING:**

¶19. Why do we consider the status of Pinnell as she was leaving Bates's home when these two ladies were enjoying one another's friendship and fellowship and were helping each other? Why go through the legal

maze to make the distinction and determine the standard when a reasonable person in like circumstances standard would suffice?

¶20. One can only wonder why there is an issue of whether Pinnell was an invitee or licensee. Pinnell was in the homeowner's home for approximately four hours visiting Bates. She was leaving the premises when she fell and broke her finger and leg on the concrete porch. The standard should be were those steps in the proper condition under like or similar circumstances of a reasonable person, not whether if she was invited to the premises or whether the homeowner should have known the steps were in bad condition and only to warn the person who is visiting them. The issue is not a jury question of whether she was a licensee or invitee. The issue in determining negligence should simply be was there reasonable care under the circumstances just as in any other negligence case.

¶21. The majority states that :

> If the judiciary takes it upon itself to abolish the distinctions, an opportunity for public participation in the decision-reaching process would not be provided and the Court would be making a ruling which is based only on the briefs submitted by the parties. The result reached by the majority would determine the public policy and affects the rights and duties of very nearly all of the citizens of our state. *See generally **Antoniewicz v. Reszcynski***, 236 N.W.2d 1, 12-18 (Wis. 1975) (Hansen, J., dissenting).

¶22. However, the majority fails to recognize that it was this Court, without the input of its citizens, which created the archaic fiction of licensee and invitee. This Court, in its process of developing its common law in this State, created this archaic fiction years ago in which it set up the licensee and invitee standards which have only caused confusion and complicated the primary issue of negligence. For a trial court to instruct a jury on the "issue of licensee or invitee" before it can reach the issue of negligence and how these standards apply in these circumstances does nothing for our legal system. This Court's fiction creates a morass. It is time to resolve premises liability cases in a more modern and just fashion as has been done by practically the majority of the states that have abolished this same old feudalistic archaic fiction. We should admit our errors and correct them. Now is the time.

¶23. Pinnell should not be classified as either an invitee or a licensee in this case. It is evident that with the passage of time the feudal status classifications have caused much confusion throughout the legal community, especially in light of our comparative negligence standard. The circuit court has asked for clarification on the issue, but the majority does not oblige. Instead, the confusion continues. I disagree with the majority likening commercial enterprises to homeowners. Therefore, I would abolish the archaic classifications this Court created and adopt the reasonable person in like circumstances standard which we apply in any other negligence case. For these reasons, I dissent.

¶24. While the same standard would apply in any negligence situation, we must not forget that there are varying degrees of reasonableness. The standard that should be carried over into premises liability is that landowners, and businesses, should act as "reasonable persons in like circumstances." What is reasonable for a homeowner is certainly different from what is expected of a business such as a Wal-Mart. "Like circumstances" is the key. Wal-Mart's circumstances, are certainly distinct from those of a homeowner. The majority's explanation of the differences between a business and a residence taken from ***Jones v. Hansen***, *supra,* says it all. Further, Black's Law Dictionary defines reasonable as "[f]air, proper, or moderate *under the circumstances*" and states that "[t]he reasonable person acts sensibly, does things without serious delay, and takes proper but *not excessive* precautions." Black's Law Dictionary 1018 (Abridged 7th ed.

2000) (emphasis added). Implementing the reasonable person in like circumstances standard would not abrogate protections or create heavier burdens for the homeowner as the majority suggests. While the standard is the same and the application will be the same, the circumstances in negligence cases are seldom the same, especially when comparing a business to a residence. There is no longer a need for class distinctions for a jury to determine what is reasonable in a given situation.

¶25. We require people to behave as reasonably prudent people in almost every other area of tort law. It makes sense to require the same conduct in premises liability. The United States Supreme Court has spoken to this very issue in admiralty which is analogous to our premises liability cases. *See* [*Kermarec v. Compagnie Generale Transatlantique*](#), 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed. 2d 550 (1959). The Court very succinctly noted the problem with the archaic distinctions.

> The distinctions which the common law draws between licensee and invitee were inherited from a culture deeply rooted to the land, a culture which traced many of its standards to a heritage of feudalism. In an effort to do justice in an industrialized urban society, with its complex economic and individual relationships, modern common-law courts have found it necessary to formulate increasingly subtle verbal refinements, to create subclassifications among traditional common-law categories, and to delineate fine gradations in the standards of care which the landowner owes to each. Yet even within a single jurisdiction, the classifications and subclassifications bred by the common law have produced confusion and conflict. As new distinctions have been spawned, older ones have become obscured. Through this semantic morass the common law has moved, unevenly and with hesitation, towards imposing on owners and occupiers a single duty of reasonable care in all the circumstances.

*Id.* at 630-31.[6]

¶26. In line with *Kermarec*, over half of the states have either completely abolished the common law distinctions or have at least abolished the invitee/licensee classifications and maintained the common law trespasser distinction. However, the majority states that there has been little change in the number of states to abolish the common law distinctions and that there is a "reversal of the trend." I suppose that changes in the laws of over half of the states is not indicia of the movement.

¶27. Some of the states that have abolished the classifications altogether are as follows: *Webb v. City and Borough of Sitka*, 561 P.2d 731 (Alaska 1977) (superseded in part by statute as explained in *Alaska v. Shanti*, 835 P.2d 1225, 1227 (Alaska 1992)); *Rowland v. Christian,* 443 P.2d 561 (Cal. 1968) (superseded in part by statute as explained in *Calvillo-Silva v. Home Grocery,* 968 P.2d 65, 71-72 (Cal. 1998)); *Pickard v. City and County of Honolulu*, 452 P.2d 445 (Haw. 1969); *Keller by Keller v. Mols*, 472 N.E.2d 161 (Ill.App.Ct.1984) (abolishing with respect to children only); *Sheets v. Ritt, Ritt & Ritt, Inc.*, 581 N.W.2d 602 (Iowa 1998); *Cates v. Beauregard Elec. Co-op., Inc.,* 328 So.2d 367 (La. 1976); *Limberhand v. Big Ditch Co.*, 706 P.2d 491 (Mont. 1985); *Moody v. Manny's Auto Repair*, 871 P.2d 935 (Nev. 1994); *Ouellette v. Blanchard*, 364 A.2d 631 (N.H. 1976); *Basso v. Miller*, 352 N.E.2d 868 (N.Y. 1976); *Nelson v. Freeland*, 507 S.E.2d 882, 866-67 (N.C. 1998).

¶28. Some of the states abrogating the licensee/invitee distinction and/or implementing the reasonableness standard while maintaining the trespasser classification are: *Smith v. Arbaugh's Rest., Inc.*, 469 F.2d 97 (D.C. Cir. 1972); *Wood v. Camp*, 284 So.2d 691, 696 (Fla. 1973) ("eliminat[ing] the distinction between commercial (business or public) visitors and social guests upon the premises, applying to both the single standard of reasonable care under the circumstances"); *Jones v. Hansen*, 867 P.2d 303 (Kan. 1994);

*Poulin v. Colby College*, 402 A.2d 846 (Me.1979); *Mounsey v. Ellard*, 297 N.E.2d 43 (Mass. 1973); *Peterson v. Balach*, 199 N.W.2d 639 (Minn. 1972); *Heins v. Webster County*, 552 N.W.2d 51 (Neb. 1996); *Ford v. Board of County Comm'rs of the County of Dona Ana*, 879 P.2d 766 (N.M. 1994); *O'Leary v. Coenen*, 251 N.W.2d 746 (N.D.1977); *Tantimonico v. Allendale Mut. Ins. Co.*, 637 A.2d 1056 (R.I.1994); *Hudson v. Gaitan*, 675 S.W.2d 699 (Tenn.1984); *Mallett v. Pickens*, 522 S.E.2d 436 (W.Va. 1999); *Antoniewicz v. Reszcynski*, 236 N.W.2d 1 (Wis. 1975); *Clarke v. Beckwith*, 858 P.2d 293 (Wyo.1993).

¶29. Like the incoming tide, the evolution of the law cannot be denied.[7]

¶30. Moreover, the majority forgets that this Court, not the Legislature, adopted these distinctions years ago. In fact, the Legislature has continually declined to address this subject. If these distinctions were created by statute, then it would be for the Legislature to address. However, these distinctions were created by this Court as a tool for interpreting and applying our negligence principles. Through our inherent powers, we created these classifications which no longer serve their intended purpose. Through our inherent powers, we can abolish them. Therefore, I would reverse the grant of summary judgment on the licensee basis and remand with instruction that the case be tried before a jury applying the reasonable person in like circumstances standard.

¶31. Accordingly, I dissent.

### DIAZ AND GRAVES, JJ., JOIN THIS OPINION.

1. For purposes of this analysis, the term "homeowner" includes all possessors of land, including those who occupy, lease or own land.

2. Although Presiding Justice McRae's dissent characterizes the District of Columbia's treatment of premises liability as having "abolished the classifications altogether," a closer look shows that the District of Columbia actually has adopted a "hybrid" standard. The case cited to support that characterization, *Smith v. Arbaugh's Rest., Inc.*, 469 F.2d 97 (D.C. Cir. 1972), *cert. denied*, 412 U.S. 939, 93 S. Ct. 2774, 37 L. Ed. 2d 399 (1973), has no precedential value. *See, e.g., Foshee v. Consol. Rail Corp.*, 849 F.2d 657, 660 (D.C. Cir. 1988) (Wald, C.J., dissenting) (*Smith* is not binding on the newly reorganized District of Columbia Court of Appeals) (A landowner is responsible only for intentional, wanton or willful injury to trespassers, but the District of Columbia has adopted a "reasonable under the circumstances" standard for invitee and licensee plaintiffs.).

3. Presiding Justice McRae's dissent, citing *Baltimore Gas & Elec. Co. v. Flippo*, 705 A.2d 1144 (Md. 1998), lists Maryland as a state which has "abrogat[ed] the licensee/invitee distinction and implement[ed] the reasonableness standard while maintaining the trespasser classification." However, in that case, the Maryland court states as follows:

> With regard to premises liability, this Court has "long recognized that a possessor of property owes a certain duty to a person who comes in contact with the property. The extent of this duty depends upon the person's status while on the property." Historically, in Maryland, four classifications have been recognized: invitee, licensee by invitation, bare licensee, and trespasser. An invitee is a person "on the property for a purpose related to the possessor's business." The possessor owes an invitee a duty of ordinary care to keep the possessor's property safe. A licensee by invitation is a social guest

to whom the "possessor owes a duty to exercise reasonable care to warn the guest of dangerous conditions that are known to the possessor but not easily discoverable." A bare licensee is a person on the property with permission, but for his or her own purposes; the possessor owes no duty except to refrain from willfully or wantonly injuring the licensee and from creating "'new and undisclosed sources of danger without warning the licensee.'" "Finally, a trespasser is one who intentionally and without consent or privilege enters another's property." As for a trespasser, even one of tender years, no duty is owed except that the possessor may not willfully or wantonly injure or entrap the trespasser.

705 A.2d at 688-89 (citations omitted).

4. The Annotation also listed Illinois, Kansas, Kentucky, Minnesota, Montana, North Carolina and West Virginia as having expressly rejected the abrogation of the traditional classifications, but independent research has shown to the contrary.

5. The following states have adapted some variant of reasonable care in the circumstances to a lawful visitor on property: Alaska, California, Hawaii, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Massachusetts, Minnesota, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Rhode Island, Tennessee, Utah, Wisconsin, West Virginia and Wyoming.

6. *See also **[Hall v. Cagle](#)**, 773 So.2d 931 (McRae, J., concurring) (citing **Skelton ex rel. Roden v. Twin County Rural Elec. Ass'n**, 611 So.2d 931, 940 (Miss. 1992) (Banks, J., dissenting)).*

7. The invitee and licensee distinctions are rooted in the common law. For a comprehensive discussion on the history and basis of the distinctions, see **[Hall v. Cagle](#)**, 773 So.2d 928 (Miss. 2000) (McRae, J., concurring) (citations omitted).